UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

DISH NETWORK L.L.C.
and NAGRASTAR LLC,

    Plaintiffs,

v.

FABIAN PAVON and
CHANDANI BACCHUS,

    Defendants.

_____/

## PLAINTIFFS' COMPLAINT

Plaintiffs DISH Network L.L.C. ("DISH") and NagraStar LLC ("NagraStar") file this complaint against the above-named Defendants and state as follows:

### PARTIES

1.    Plaintiff DISH is a Colorado limited liability company with its principal place of business located at 9601 South Meridian Blvd., Englewood, Colorado 80112.

2.    Plaintiff NagraStar is a Colorado limited liability company with its principal place of business located at 90 Inverness Circle East, Englewood, Colorado 80112.

3.    Defendants Fabian Pavon and Chandani Bacchus are individuals believed to be residing at 16111 SW 102nd Ave., Miami, Florida 33157.

### JURISDICTION AND VENUE

4.    This action alleges violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*, the Federal Communications Act, 47 U.S.C. § 605 *et seq.*, and the Electronic Communications Privacy Act, 18 U.S.C. § 2511 *et seq.*  Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1338.

1

5. Defendants reside in and regularly conduct business in the State of Florida, and therefore are subject to this Court's personal jurisdiction.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Defendants reside in this judicial district, § 1391(b)(2) because a substantial part of the events giving rise to DISH and NagraStar's claims occurred in this district, and § 1391(b)(3) because Defendants are subject to personal jurisdiction in this district.  Venue is also proper in this Court under 28 U.S.C. § 1400(a) because this case asserts claims relating to the protection of copyrighted works.

## NATURE OF THE ACTION[1]

7. Defendants have been circumventing DISH and NagraStar's security system and receiving DISH's satellite broadcasts of copyrighted television programming without payment of the required subscription fee.  Defendants accomplished this in part by subscribing to a pirate television service known as NFusion Private Server ("NFPS").  Through NFPS, Defendants illegally obtained NagraStar's control words or "keys," which they then used to decrypt DISH's satellite signal and view DISH programming without authorization.  Defendants' acts violate the Digital Millennium Copyright Act, Federal Communications Act, and the Electronic Communications Privacy Act, as set forth below.

---

[1] The allegations made by DISH and NagraStar concerning the whereabouts and wrongful conduct of Defendants are based on the investigation completed to date, and with the reasonable belief that further investigation and discovery in this action will lead to additional factual support.  DISH and NagraStar reserve the right to supplement or amend its claims and the basis for those claims, with leave of court if necessary, as additional investigation and discovery is conducted.

**DISH NETWORK SATELLITE TELEVISION PROGRAMMING**

8. DISH is a multi-channel video provider that delivers video, audio, and data services to approximately 14 million customers throughout the United States, Puerto Rico, and the U.S. Virgin Islands via a direct broadcast satellite system.

9. DISH uses high-powered satellites to broadcast, among other things, movies, sports, and general entertainment services to consumers who have been authorized to receive such services after payment of a subscription fee, or in the case of a pay-per-view movie or event, the purchase price.

10. DISH contracts for and purchases the distribution rights for most of the programming broadcast on the DISH platform from providers such as network affiliates, motion picture distributors, pay and specialty broadcasters, cable networks, sports leagues, and other holders of programming rights.

11. The works broadcast by DISH are copyrighted. DISH and NagraStar have the authority of the copyright holders to protect the works from unauthorized reception and viewing.

12. DISH programming is digitized, compressed, and scrambled prior to being transmitted to multiple satellites located in geo-synchronous orbit above Earth. The satellites, which have relatively fixed footprints covering the United States and parts of Canada, Mexico, and the Caribbean, relay the encrypted signal back to Earth where it can be received by DISH subscribers that have the necessary equipment.

13. A DISH satellite television system consists of a compatible dish antenna, receiver, smart card which in some instances is internalized in the receiver, television, and cabling to connect the components. DISH provides receivers, dish antenna, and other digital equipment for

the DISH system. Smart cards and other proprietary security technologies that form a conditional access system are supplied by NagraStar.

14. Each DISH receiver and NagraStar smart card is assigned a unique serial number that is used by DISH when activating the equipment and to ensure the equipment only decrypts programming the customer is authorized to receive as part of his subscription package and pay-per-view purchases.

15. The NagraStar conditional access system performs two interrelated functions in the ordinary course of its operation: first, subscriber rights management, which allows DISH to "turn on" and "turn off" programming a customer has ordered, cancelled, or changed; and second, protection of the NagraStar control words that descramble DISH's satellite signal, which in turn prevents unauthorized decryption of DISH programming.

16. An integral part of NagraStar's conditional access system is a smart card having a secure embedded microprocessor. The DISH receiver processes an incoming DISH satellite signal by locating an encrypted part of the transmission known as the NagraStar entitlement control message and forwards it to the smart card. Provided the subscriber is tuned to a channel he is authorized to watch, the smart card uses its decryption keys to unlock the message, uncovering a NagraStar control word. The control word is then transmitted back to the receiver to decrypt the DISH satellite signal.

17. Together, the DISH receiver and NagraStar smart card convert DISH's encrypted satellite signal into viewable programming that can be displayed on the attached television of an authorized DISH subscriber.

## PIRACY OF DISH NETWORK PROGRAMMING

18.     The term "piracy" (or signal theft) is used throughout the pay-tv industry to refer to the circumvention of security technology protecting a pay-tv signal and/or the unauthorized reception, decryption, or viewing of a pay-tv signal. A form of satellite piracy exists that goes by several names including "control word sharing," "Internet key sharing," or more simply "IKS."

19.     With IKS, once piracy software is loaded onto an unauthorized receiver, the end user connects the receiver to the Internet via a built-in Ethernet port or an add-on dongle.  The Internet connection automatically updates piracy software on the receiver and contacts a computer server that provides the necessary NagraStar control words.

20.     The computer server, called an "IKS server," has multiple, subscribed NagraStar smart cards connected to it, and thus the ability to provide the control words.  Access to an IKS server typically requires a valid passcode.  Once access has been obtained, control words are sent from the IKS server over the Internet to an unauthorized receiver, where they are used to decrypt DISH's signal and view programming without paying a subscription fee.

## DEFENDANTS' WRONGFUL CONDUCT

21.     NFPS is a subscription-based IKS service, whereby members purchase a subscription to the IKS service to obtain the control words that are used to circumvent the DISH and NagraStar security system and receive DISH's satellite broadcasts of television programming without authorization.

22.     Digital TV is a Dominican Republic company that sold subscriptions to NFPS. Digital TV provided Plaintiffs with copies of their business records pertaining to Defendants. Digital TV's records show that Defendants purchased multiple subscriptions to NFPS within the statute of limitations for each claim that DISH and Nagra are bringing against Defendants. Each

NFPS subscription that Defendants purchased is believed to have been valid for a one year period of time.

23. Defendants accessed the NFPS service by using an unauthorized receiver loaded with piracy software. Each time Defendants tuned their unauthorized receiver to an encrypted DISH channel, the receiver requested the NagraStar control word for that particular channel from the NFPS server. The NFPS server returned the control word to Defendants. Defendants used the control word to decrypt DISH and NagraStar's satellite signal and view DISH programming without having to purchase a subscription.

24. Defendants' actions cause actual and imminent irreparable harm for which there is no adequate remedy at law. Through IKS piracy, Defendants enjoy unlimited access to DISH programming, including premium and pay-per-view channels, causing lost revenues that cannot be fully calculated. In addition, Defendants' actions damage the business reputations and goodwill of DISH and NagraStar, and result in the need for costly and continuous security updates, investigations, and legal actions aimed at stopping satellite piracy.

## CLAIMS FOR RELIEF

## COUNT I

**Circumventing An Access Control Measure In Violation Of The Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1)**

25. DISH and NagraStar repeat and reallege the allegations in paragraphs 1-24.

26. Defendants have been circumventing the DISH security system in violation of 17 U.S.C. § 1201(a)(1) by the acts set forth above, including their receipt of NagraStar's control words from NFPS, and their use of those pirated control words to decrypt DISH's satellite transmissions of television programming.

27. The DISH and NagraStar security system is a technological measure that effectively controls access to, copying, and distribution of copyrighted works. Defendants' actions that constitute violations of 17 U.S.C. § 1201(a)(1) were performed without the permission, consent, or authorization of DISH, NagraStar, or any owner of copyrighted programming broadcast on the DISH platform.

28. Defendants violated 17 U.S.C. § 1201(a)(1) willfully and for the purpose of commercial advantage or private financial gain.

29. Defendants knew or should have known their actions were illegal and prohibited. Such violations have and will continue to cause damage to DISH and NagraStar in an amount to be proven at trial. Unless restrained and enjoined by the Court, Defendants will continue to violate 17 U.S.C. § 1201(a)(1).

## COUNT II

**Receiving Satellite Signals Without Authorization in Violation of the**

**Federal Communications Act, 47 U.S.C. § 605(a)**

30. DISH and NagraStar repeat and reallege the allegations in paragraphs 1-24.

31. Through NFPS, Defendants have been receiving NagraStar's control words and DISH's satellite transmissions of television programming for their own benefit and without authorization in violation of 47 U.S.C. § 605(a).

32. Defendants violated 47 U.S.C. § 605(a) willfully and for purposes of commercial advantage or private financial gain.

33. Defendants knew or should have known their actions were illegal and prohibited. Such violations have and will continue to cause damage to DISH and NagraStar in an amount to

be proven at trial. Unless restrained and enjoined by the Court, Defendants will continue to violate 47 U.S.C. § 605(a).

## COUNT III

### Intercepting Satellite Signals in Violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511(1)(a) and 2520

34. DISH and NagraStar repeat and reallege the allegations in paragraphs 1-24.

35. Through NFPS, Defendants have been intercepting NagraStar's control words and DISH's satellite transmissions of television programming in violation of 18 U.S.C. §§ 2511(1)(a) and 2520.

36. Defendants violated 18 U.S.C. §§ 2511(1)(a) and 2520 for tortious and illegal purposes, or for commercial advantage or private financial gain.

37. Defendants' interception was intentional, and therefore illegal and prohibited. Such violations have and will continue to cause damage to DISH and NagraStar in an amount to be proven at trial. Unless restrained and enjoined by the Court, Defendants will continue to violate 18 U.S.C. §§ 2511(1)(a) and 2520.

## PRAYER FOR RELIEF

WHEREFORE, DISH Network L.L.C. and NagraStar LLC seek judgment against Defendants as follows:

A. For a grant of permanent injunctive relief restraining and enjoining Defendants, and their employees, agents, representatives, attorneys, and all persons acting or claiming to act on their behalf or under their direction or authority, and all persons acting in concert or in participation with them, from circumventing the DISH and NagraStar security system or receiving without authorization DISH's satellite transmissions of television programming;

B.    For an order impounding all unauthorized receivers, dongles, software, and other devices, components, or parts thereof in the custody or control of Defendants that the Court has reasonable cause to believe were involved in a violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201, or the Communications Act, 47 U.S.C. § 605;

C.    Award DISH and NagraStar the greater of its actual damages together with any profits made by Defendants that are attributable to the violations alleged herein, or statutory damages in the amount of up to $2,500 for each violation of 17 U.S.C. § 1201(a)(1), pursuant to 17 U.S.C. §§ 1203(c)(2) and 1203(c)(3)(A);

D.    Award DISH and NagraStar the greater of its actual damages together with any profits made by Defendants that are attributable to the violations alleged herein, or statutory damages in the amount of up to $10,000 for each violation of 47 U.S.C. § 605(a), pursuant to 47 U.S.C. § 605(e)(3)(C)(i).  DISH and NagraStar seek to increase that amount up to $100,000 for each violation, at the Court's discretion, in accordance with 47 U.S.C. § 605(e)(3)(C)(ii);

E.    Award DISH and NagraStar the greater of its actual damages together with any profits made by Defendants that are attributable to the violations alleged herein, or statutory damages in the amount of $100 per day for each violation of 18 U.S.C. §§ 2511(1)(a) or $10,000, pursuant to 18 U.S.C. § 2520(c)(2);

F.    Award DISH and NagraStar punitive damages pursuant to 18 U.S.C. § 2520(b)(2);

G.    For an award of DISH and NagraStar's costs, attorneys' fees, and investigative expenses under 17 U.S.C. § 1203(b)(4)-(5), 47 U.S.C. § 605(e)(3)(B)(iii), and 18 U.S.C. § 2520(b)(3);

H.⠀⠀⠀⠀For pre and post-judgment interest on all damages, from the earliest date permitted by law at the maximum rate permitted by law; and

I.⠀⠀⠀⠀For such additional relief as the Court deems just and equitable.

Dated: December 13, 2018⠀⠀⠀⠀⠀⠀⠀⠀Respectfully submitted,

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀s/ James A. Boatman, Jr.
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀James A. Boatman, Jr.
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀jab@boatman-law.com
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Florida Bar No. 0130184
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀**THE BOATMAN LAW FIRM PA**
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀3021 Airport-Pulling Road North, Suite 202
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Naples, FL 34105
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Telephone: (239) 330-1494

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Attorneys for Plaintiffs DISH Network
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀L.L.C. and NagraStar LLC